IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ANDREW J. LLOYD,          :
                                 :
            Petitioner,     :
                                 :
      v.                    :     Civil Action No. 21-1777-CFC
                                 :
BRIAN EMIG, Warden, and    :
ATTORNEY GENERAL OF THE   :
STATE OF DELAWARE,       :
                                 :
           Respondents.[1]  :

---

Andrew J. Lloyd. *Pro se* Petitioner.

Kathryn Joy Garrison, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

## **MEMORANDUM OPINION**

December 3, 2024
Wilmington, Delaware

---

[1]The Court has substituted Warden Brian Emig for former Warden Robert May, an original party to the case. *See* Fed. R. Civ. P. 25(d).

CONNOLLY, CHIEF JUDGE:

Pending before the Court is Petitioner Andrew J. Lloyd's Petition and Amended

Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C § 2254. (D.I. 1; D.I. 9) The

State filed an Answer in opposition. (D.I. 12) For the reasons discussed below, the

Court will deny the relief requested and dismiss the Petition.

## I.    BACKGROUND

In January 2014, after a string of shootings in the region, the Wilmington Police Department and the FBI began investigating a heroin dealing ring in Wilmington, Delaware. [Petitioner] was one of the main subjects of the investigation. The Wilmington Police and the FBI also collaborated with the Delaware State Police and the U.S. Drug Enforcement Administration who were conducting a parallel investigation of [Petitioner] and one of his co-defendants, Jarrell Brown ("Jarrell").

During the course of the investigation, [Petitioner] took part in many large-scale drug transactions, moving an average of 1,000–1,600 bundles of heroin per week. He operated primarily through his associates, having them package, pick up, and deliver the drugs. [Petitioner] used the homes of Lakenya Howard, Wanda Lloyd ("Wanda"), Jarrell, and others to store, package, and prepare heroin for distribution. [Petitioner] also used places and names associated with national political figures to identify the homes and his associates.

On October 30, 2014, after months of surveillance and investigation, police obtained a search warrant and searched [Petitioner's] home and the homes of his many associates. They seized $12,932 and a car from [Petitioner's] home in Newark. They did not find drugs in [Petitioner's] home, but found them in his associates' homes. Police then arrested [Petitioner] and forty other individuals.

> After earlier indictments, in late 2014, a New Castle County grand jury handed down a final 163–count, multiple-defendant indictment. The grand jury indicted [Petitioner] for a litany of offenses including criminal racketeering, conspiracy to commit criminal racketeering, multiple counts of aggravated possession of heroin, drug dealing heroin, second degree conspiracy, and possession of drug paraphernalia.

*Lloyd v. State*, 152 A.3d 1266, 1268–69 (Del. 2016).

In October 2015, the Superior Court conducted an eight-day joint trial for Petitioner and his co-defendant Antoine Miller. (D.I. 12 at 2)  On October 30, 2015, a Delaware Superior Court jury convicted Petitioner of all charges. *See Lloyd,* 152 A.3d at 1269.  The Superior Court sentenced Petitioner to total of 64 years of Level V incarceration, followed by decreasing levels of supervision. (D.I. 13-1 at Entry No. 68) On December 11, 2015, the Superior Court granted Petitioner's motion for modification of sentence and modified his sentence to run all Level V sentences concurrently, thereby reducing Petitioner's sentence to 25 years at Level V followed by two years at decreasing levels of supervision. (D.I. 13-1 at Entry No. 71)  Petitioner appealed, and the Delaware Supreme Court affirmed his convictions. *See Lloyd*, 152 A.3d at 1275.

In February 2017, Petitioner filed a *pro se* motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion to appoint counsel. (D.I. 13-1 at Entry No. 92)  The Superior court appointed counsel and, on May 3, 2018, post-conviction counsel filed an amended Rule 61 motion.  After conducting an evidentiary hearing, a Superior Court Commissioner recommended that Petitioner's Rule 61 motion be denied. *See State v. Lloyd*, 2019 WL 2181874, at \*8 (Del. Super. Ct. May 20, 2019).  Petitioner appealed the Commissioner's recommendation to the Superior Court.  On November 7, 2019 the Superior Court adopted the Commissioner's

2

Report and Recommendation and denied Petitioner's amended Rule 61 motion.

(D.I. 13-9 at 39)  The Delaware Supreme Court affirmed that decision on February 5,

2021. *See Lloyd v. State*, 247 A.3d 229 (Table), 2021 WL 408879 (Del. Feb. 5, 2021).

## II.    GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) "to reduce delays in the execution of state and federal criminal sentences . . .

and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*,

538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal court may consider a habeas

petition filed by a state prisoner only "on the ground that he is in custody in violation of

the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Additionally, AEDPA imposes procedural requirements and standards for analyzing the

merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure

that state-court convictions are given effect to the extent possible under law." *Bell v.

Cone*, 535 U.S. 685, 693 (2002).

### B.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief

unless the petitioner has exhausted all means of available relief under state law.  *See*

28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v.

Connor*, 404 U.S. 270, 275 (1971).  AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the
> courts of the State; or

3

> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the

4

claim due to an independent and adequate state procedural rule, the claim is exhausted

but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S.

255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims

unless the petitioner demonstrates either cause for the procedural default and actual

prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if

the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260

(3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural

default, a petitioner must show that "some objective factor external to the defense

impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*,

477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that

the errors during his trial created more than a possibility of prejudice; he must show that

the errors worked to his actual and substantial disadvantage, infecting his entire trial

with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has

probably resulted in the conviction of one who is actually innocent,"[2] then a federal court

can excuse the procedural default and review the claim in order to prevent a

fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451

(2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice

exception applies only in extraordinary cases, and actual innocence means factual

innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623

(1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting

---

[2]*Murray*, 477 U.S. at 496.

"new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This

presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

### D. Ineffective Assistance of Counsel

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96.

A court may choose to address the prejudice prong before the deficient performance prong, and may reject an ineffective assistance claim solely on the ground that the petitioner was not prejudiced. *See Strickland*, 466 U.S. at 668. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689.

## III.    DISCUSSION

Petitioner asserts the following five Claims: (1) trial counsel provided ineffective assistance by failing to "investigate/sufficiently communicate" with him (D.I. 1 at 5); (2) trial counsel provided ineffective assistance by failing to move to suppress the wiretap warrants for his cell phones on the basis that the State failed to satisfy the "necessity requirement"[3] (D.I. 1 at 7; D.I. 9 at 9); (3) trial counsel provided ineffective assistance by failing to move to suppress the wiretap warrants for his cell phones on the basis that the State failed to demonstrate probable cause (D.I. 9 at 13-15); (4) trial counsel provided ineffective assistance by failing to file a motion for judgment of acquittal (D.I. 9 at 9); and (5) he is actually innocent (D.I. 9 at 17).

### A.  Claim One: IATC for Failing to Investigate/Communicate

In Claim One, Petitioner asserts that trial counsel provided ineffective assistance ("IATC") by failing to "investigate/sufficiently communicate" and by failing to review his co-defendant statements and surveillance videos with him. (D.I. 1 at 5; D.I. 9 at 18-19) Petitioner presented a substantially similar argument in his Rule 61 motion, with one additional sub-argument: Petitioner would have accepted the plea (recommending a sentence of eight to 22 years) offered by the State after his final case review if trial

---

[3]In his Petition, Petitioner merely asserts that defense counsel was ineffective for failing to file a motion to suppress the wiretap evidence. (D.I. 1 at 7) Petitioner's Amended Petition asserts that trial counsel was ineffective for failing to file a motion to suppress the wiretap evidence on the basis that the State failed to demonstrate probable cause. (D.I. 9 at 13-15) In his Rule 61 motion, Petitioner asserted that trial counsel was ineffective for not filing a motion to suppress the wiretap evidence on the basis that the State failed to demonstrate necessity. *See Lloyd*, 2019 WL 2181874, at *6. Given its obligation to liberally construe *pro se* filings, the Court views Petitioner's general "IATC/failure to file a suppression motion" argument as based on the State's alleged failure to demonstrate both necessity and probable cause for wiretapping his phones.

counsel had informed him about the substance of the State's case. (D.I. 13-11 at 97-99)  Given the obligation to liberally construe a *pro se* petitioner's filings, the Court views Claim One as including the same sub-argument presented in Petitioner's Rule 61 motion.

The Superior Court Commissioner rejected Claim One after finding that trial counsel substantively communicated with Petitioner and adequately informed him of the risks of going to trial. *See Lloyd*, 2019 WL 2181874, at *3-5.  The Commissioner also concluded that Petitioner knowingly and intelligently decided not to enter a guilty plea. *Id.* at *5.  Petitioner appealed the Commissioner's Report and Recommendation ("R&R") to the Superior Court, but the Superior Court adopted the R&R after holding that the record fully supported the Commissioner's decision. *See id.* at *3.  The Delaware Supreme Court affirmed that decision "on the basis of and for the reasons assigned by the Superior Court in its November 7, 2019 Order, which adopts the May 20, 2019 Commissioner's Report and Recommendation." *Lloyd*, 2021 WL 408879, at *1.  Given these circumstances, the Court must review Claim One under § 2254(d), which means Petitioner will only be entitled to relief if the Superior Court's[4] denial of the

---

[4]The Superior Court Commissioner's May 20, 2019 R&R and the Superior Court's November 7, 2019 order adopting the R&R together comprise the last state court decision containing a reasoned analysis.  The Court interchangeably refers to the Commissioner and the Superior Court analyzing Petitioner's instant ineffective assistance of counsel argument under § 2254(d).  *See Wilson v. Sellers*, 584 U.S. 122, 127-28 (2018) (reiterating that when a higher court affirms a lower court's judgment without an opinion or other explanation, federal habeas law employs a "look through" presumption and assumes that the later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment); *Y1st v. Nunnemaker*, 501 U.S. 797, 804 (1991) (under the "look through" doctrine, "where there has been one reasoned state judgment rejecting a federal claim, later unexplained

Claim was either contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts adduced in light of the evidence presented.

Turning to the first prong of the § 2254(d)(1) inquiry in this proceeding, the Court notes that the Superior Court correctly identified *Strickland* as governing Petitioner's instant IATC argument. *See Lloyd,* 2019 WL 2181874, at 3 n. 20. Thus, the Superior Court's decision was not contrary to clearly established federal law.

The Court must also determine if the Superior Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Superior Court's denial of Petitioner's IATC allegation through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

_____

orders upholding that judgment or rejecting the same claim rest upon the same ground.").

When determining that trial counsel did not perform deficiently because he substantively communicated with Petitioner prior to trial, the Superior Court opined:

> The [Commissioner's] Report [] detailed an extensive record of communications between trial counsel and [Petitioner] regarding the re-indictment, wiretap intercepts, case law, transcripts, plea offers, DEA reports, the State's supplemental discovery (which included his co-defendants' suppression hearing transcripts), and jury instructions. The record fully supports the Commissioner's finding that trial counsel discussed with [Petitioner] all aspects of the case, including the seriousness of the offenses, the minimum mandatory time he faced if convicted, the witnesses and their likely testimony, the wiretap intercepts, and the various pleas offered by the State. Trial counsel's records show he (i) spent substantial time preparing [Petitioner's] case, (ii) made several attempts to advise [Petitioner] of the co-defendant's statements, (iii) participated in discussions during which the State outlined for [Petitioner] the evidence against him, and (iv) advised [Petitioner] that he was not likely to prevail at trial. The Commissioner correctly found that [Petitioner] chose to ignore trial counsel's advice and steadfastly believed no one would testify against him. Despite [Petitioner's] contentions on appeal, the Court finds that trial counsel substantively communicated with [Petitioner].

(D.I. 13-11 at 322-323)

The Superior Court also accepted the Commissioner's finding that Petitioner had full information to assess the risks of going to trial in comparison to accepting a plea. After specifically noting that Petitioner "had no right to possess [witness] statements or plea agreements [of his co-defendants] before trial and that [Petitioner] was informed of their contents by trial counsel and the State at final case review," the Superior Court explained:

> The Commissioner correctly found [Petitioner's] own letters and communications with the Court reflected a detailed understanding of the State 's evidence. Therefore, the Court finds [Petitioner] had more than adequate information to weigh the risks of trying the case versus pleading guilty.

11

(D.I. 13-11 at 324)

After reviewing the record, the Court concludes that the Superior Court

reasonably determined the facts when finding that trial counsel substantively

communicated with Petitioner.  For instance, the record reveals that trial counsel

provided Petitioner with: police reports (D.I. 13-11 at 17-18, 80, 152), Petitioner's own

statement to the DEA (in which he admitted to dealing large amounts of heroin) (D.I.13-

11 at 24, 83), co-defendant Demetrius Brown's statement (D.I. 13-11 at 24, 83, 158),

the wiretap transcripts (D.I 13-11 at 24, 50-54, 83-84, 151), his co-defendants' dockets

(D.I. 13-11 at 24), and various other documents (D.I. 13-11 at 159-61).  In his Rule 61

affidavit, trial counsel explained he

> was assigned to represent [Petitioner] for a racketeering case
> that involved a large-scale heroin distribution ring in New
> Castle and Kent County.  Rule 61 counsel cites to letters that
> I mailed to [Petitioner] as evidence of a lack of communication
> concerning [Petitioner's] case and potential defenses.  [Trial]
> counsel had numerous telephone conversations with
> [Petitioner] in which we discussed his case and defenses.
> These telephone conversations were through the Department
> of Correction phone system as well as [Petitioner]
> communicating with counsel by use of a cell phone he had
> access to while in prison.
>
> Rule 61 counsel's petition is silent concerning other means of
> communication between me and [Petitioner]. In addition to
> communicating via telephone, [trial counsel] scheduled prison
> visits with [Petitioner] in which the defense team investigator
> was present.  [Trial counsel] met with [Petitioner],  in person,
> numerous times at the various prisons where he was housed.
> Similarly, [trial] counsel also communicated with [Petitioner]
> via the videophone system at the Office of Conflict counsel.
> Again, the investigator was present during these video
> consults.  These visits and video phones were scheduled to
> discuss with [Petitioner] the contents of police reports, search
> warrants, codefendants' statements, trial procedure and

> defense strategy. [Trial] counsel also met with [Petitioner], on
> at least two occasions, to discuss the State's plea offers.
>
> [Trial] counsel and [Petitioner] also communicated on
> numerous occasions before, and after, court proceedings,
> including trial. These events included an arraignment, fast
> track hearing, case reviews, status conference, jury selection,
> and every day during trial. Additionally, because [Petitioner]
> was housed at the Sussex Correctional Institution, [trial
> counsel] requested the State to transfer him to the Howard R.
> Young Correctional Institution. This was done so that [trial
> counsel] could have easier access to [Petitioner] both before,
> and during trial. [Trial] counsel had numerous personal
> interactions with [Petitioner] through telephone, videophone,
> prison visits, and court proceeding. During all of these events,
> we would discuss his case.

(D.I. 13-11 at 144-46)

During the Rule 61 evidentiary hearing, trial counsel testified that he spoke to

Petitioner on the phone "between . . . ten and twenty times," in addition to personal

meetings at the courthouse for pre-trial events and scheduled meetings at Department

of Correction facilities. (D.I. 13-11 at 79) Trial counsel also testified that he reviewed

the co-defendants' statements with Petitioner and let him know who had entered pleas,

and that they were expected to testify against him. (D.I. 13-11 at 24, 27, 56-57, 156-58)

For instance, trial counsel explained:

> When meeting with [Petitioner] to discuss the reports or trial
> strategy, he had no interest in that other than reading the
> reports. His . . . focus on trial strategy and his opinion was no
> one was going to testify against him. He would repeatedly tell
> us that. We would say, well, we can't go based upon that
> because I have to prepare that they're going testify against
> you. [Petitioner's] main focus was on the wiretap.

(D.I. 13-11 at 20-21) Trial counsel further explained that they discussed the anticipated

evidence, "what we anticipated was coming, and [Petitioner's] response was no one's

gonna testify, I'm not worried about it." (D.I. 13-11 at 38)

13

On habeas review, the Court "must presume that state-court factual findings –
including its credibility findings – are correct unless the presumption is rebutted by clear
and convincing evidence." *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 850 (3d Cir.
2017), *as amended* (July 18, 2017); *see Marshall v. Lonberger*, 459 U.S. 422, 434
(1983) ("[F]ederal habeas courts [have] no license to redetermine credibility of
witnesses whose demeanor has been observed by the state trial court, and not by
them."). Petitioner has not provided any clear and convincing evidence rebutting the
Superior Court's factual finding that trial counsel substantively communicated with
Petitioner. Additionally, the Superior Court's factual findings are fully supported by the
evidence presented during Petitioner's evidentiary hearing. Thus, the Court accepts as
correct the Superior Court's factual determination that trial counsel substantively
communicated with Petitioner. Based on this factual determination, the Court further
concludes that the Superior Court reasonably applied *Strickland* when holding that the
frequency and substance of trial counsel's communication with Petitioner did not fall
below an objective standard of reasonableness.

The Court also concludes that the Superior Court reasonably applied *Strickland*
in finding that Petitioner suffered no prejudice as a result of trial counsel's
communication. In the context of a rejected plea offer, a petitioner establishes prejudice
by demonstrating a "reasonable probability that the plea offer would have been
presented to the court (i.e., that the defendant would have accepted the plea and the
prosecution would not have withdrawn it in light of intervening circumstances), that the
court would have accepted its terms, and that the conviction or sentence, or both, under

14

the offer's terms would have been less severe than under the judgment and sentence ultimately imposed." *Lafler v. Cooper,* 566 U.S. 156, 163-64 (2012).

In light of the record developed during Petitioner's Rule 61 proceeding, Petitioner cannot demonstrate a reasonable probability that he would have accepted a plea but for the frequency and substance of trial counsel's communication. In a letter dated September 28, 2015, trial counsel informed Petitioner of the State's plea offer, explaining that the "minimum/mandatory for these charges is a total of 10 years and the State will not seek more than 25 years … [and] will not seek habitual sentencing." (D.I. 13-11 at 198) Trial counsel's letter explicitly advised, "Based on the number of drug dealing and aggravated possession charges in your indictment, it is likely that the State will be able to convict you for at least one charge that results in a life sentence. A life sentence is natural life." (*Id.*) During the evidentiary hearing, trial counsel testified that Petitioner's primary focus was on who was going to testify against him, and that Petitioner did not express an interest in accepting a plea. (D.I. 13-11 at 20-21, 38) At final case review, both the trial court and the State informed Petitioner that many of his co-defendants had entered guilty pleas and were going to testify on behalf of the State. The trial court even had the State explain in detail some of the evidence it intended to present. (D.I. 13-11 at 183-84,186-88) And, although the trial court and trial counsel urged Petitioner that a guilty plea might be in his best interest, Petitioner continued to insist that his co-defendants were not going to testify against him. (D.I. 13-11 at 38, 183-89)

For these reasons, the Court finds that the Superior Court reasonably applied *Strickland* when denying Petitioner's instant IATC Claim. Accordingly, the Court will

deny Claim One for failing to satisfy § 2254(d).

### B. Claim Two: IATC for Failure to Move to Suppress Wiretap Warrant on Basis There was no Necessity

Next, Petitioner asserts that trial counsel provided ineffective assistance by failing to file a motion to suppress the wiretap warrants for his cell phones on the basis that the State failed to satisfy the necessity requirement, because the wiretap applications were basically a duplication of the wiretap application for Jarrell Brown. Petitioner presented this same argument to the Delaware state courts in his Rule 61 motion. The Superior Court denied the Claim, and the Delaware Supreme Court affirmed that decision "on the basis of and for the reasons assigned by the Superior Court in its November 7, 2019f Order." *Lloyd*, 2021 WL 408879, at *1. Thus, Claim Two will only warrant relief if the Superior Court's decision was contrary to, or an unreasonable application, of *Strickland*.

To obtain an order authorizing the interception of wire communications under Section 2407 of the Delaware wiretap statute, the application must include a "full and complete statement as to whether or not other investigative procedures have been tried and failed, why such procedures reasonably appear to be unlikely to succeed if tried, or why such procedures would be too dangerous if tried.'" *State v. Brooks*, 2013 WL 4051049, at *3 (Del. Super. Ct. July 30, 2013) (citing 11 Del. C. § 2407(3)). This prerequisite is known as the "necessity" requirement. *See id.* Pursuant to well-settled Delaware law,

> [a] literal reading of [Delaware's wiretap] statute reveals that a judge must find normal investigative procedures have failed, or reasonably appear unlikely to succeed, or are too dangerous. Affidavits explaining the prospective or retroactive failure of several reasonable investigative techniques will

16

> suffice. Judges are given broad discretion when issuing a wiretap order, and the government's burden of establishing compliance is not great. The necessity requirement is not designed to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques. A wiretap order should not be invalidated simply because defendants are able to suggest post factum some investigative technique that might have been used and was not.

*State v. Felton*, 2016 WL 3568523, at *13 (Del. Super. Ct. June 22, 2016) (cleaned up).

In his Rule 61 motion, Petitioner argued that the State failed to satisfy the necessity requirement because "the wiretap for his phone line mostly duplicated the application for Brown's wiretap or was conclusory in nature." *Lloyd*, 2019 WL 2181874, at *6. The Commissioner rejected Petitioner's argument after reviewing the following record.

Petitioner was "one of the main subjects" in a multi-jurisdictional, collaborative investigation of "a heroin dealing ring in Wilmington, Delaware" involving Petitioner, Jarrell Brown, and others. *Lloyd*, 152 A.3d at 1268. The investigation of Petitioner presented the same investigative difficulties presented by the investigation of Brown, and investigators informed the issuing court of those difficulties. For instance, during the evidentiary hearing, trial counsel discussed how the wiretap affidavit for one of Petitioner's phones contained five pages setting forth the normal investigative techniques that would not have worked when investigating Petitioner, including physical surveillance, search warrants, subpoenas, confidential reliable individuals, undercover law enforcement activities, interviews with suspects, and previous applications for wire

17

and oral communications. (D.I. 13-11 at 48-49)  In his Rule 61 affidavit, trial counsel

explained:

> The police investigations into Brown and [Petitioner] were
> separate investigations until both state and Wilmington found
> themselves following [Petitioner]. The agencies met and
> decided to work a joint investigation. During the wiretap of
> Brown, [Petitioner's] voice was identified as someone of
> interest.  Based upon the police's inability to get [Petitioner]
> directly they applied for and were granted a wiretap of
> [Petitioner's] phone.  The warrant was properly renewed and
> granted by the Superior Court.
>
> Obviously, Rule 61 Counsel is correct that I did not file a
> motion to suppress the wiretap and the evidence obtained.  I
> reviewed the factual basis for the warrant and the applicable
> law concluding that such a motion lacked merit. I informed
> [Petitioner] that I did not believe that the motion had merit and
> I would not file a frivolous motion.

(DI. 13-11 at 147)

Additionally, the Commissioner was aware that, in 2015, Petitioner sent the trial

judge *pro se* letters presenting arguments for a suppression motion for the wiretap

evidence he wanted trial counsel to file on his behalf.  (D.I. 13-11 at 234-240, 262, 274-

275)  The trial judge forwarded the letter to trial counsel, along with his own analysis

and response to Petitioner's arguments, essentially indicating that Petitioner's

arguments lacked merit.  (D.I. 13-13 at 3-5)

The Commissioner assessed the requirements for securing a wiretap under

Delaware law in conjunction with the extent of trial counsel's research, and concluded

that trial counsel did not perform deficiently because a motion to suppress the wiretap

evidence would have been fruitless.  The Commissioner opined that:

> Trial Counsel's time records show that he researched the
> suppression issues and considered whether a motion should
> be filed. Ultimately, he decided any such motion would be

18

frivolous and he informed [Petitioner] that there was no merit to filing a motion to suppress. It appears the trial judge agreed. Great weight and deference are given to tactical decisions by the trial attorney and counsel cannot be deemed ineffective for failing to pursue motions that lack merit. In fact, Trial Counsel had an obligation not to file frivolous motions. [Petitioner], having been unable to successfully contradict the reasoning set forth in the 2015 Letter, is now unable to carry his burden that Trial Counsel's actions were in error.

Further, an independent review of the legal issues presented demonstrates that it is unlikely a motion to suppress would have been successful. According to Trial Counsel, [Petitioner] was very conscious of police surveillance and would use counter-surveillance measures, such as using a rental car and driving erratically, to avoid detection. Although there were two separate, but parallel, investigations, law enforcement were unable to build a strong case against [Petitioner] and when his voice was recognized on a call with Brown, they applied for and received a wiretap of three separate phones related to [Petitioner]. The State summarized the investigation techniques that were unsuccessful and the profiles of the confidential informants.

Trial Counsel agreed that the affidavit "articulated that they weren't able to get close to him," the normal investigative techniques that were not fruitful, and that the affidavit referenced the confidential informants as past proven and reliable. The Application for Interception of Wire Communications was eighty (80) pages in length and included: (a) an explanation of the various individuals, their relationship to each other and criminal history; (b) specific conversations between [Petitioner] and others that purportedly discussed illegal drug dealing activity; (c) profiles of the confidential informants and that one had personal knowledge of [Petitioner] and Brown facilitating heroin transactions and assisted law enforcement with the purchase of heroin directly from Brown; (d) a summary of the detective's two year history [that] included fifty (50) encounters with [Petitioner]; (e) an explanation of why and how [Petitioner]

19

> switched phones; and (f) an explanation of why traditional
> investigative procedures have been tried and failed, are
> reasonably unlikely to succeed, or are too dangerous to
> employ.
>
> The State sufficiently demonstrated that alternative means of
> investigation were not likely to succeed. [Petitioner] had
> engaged in evasive activities including switching phones,
> using coded language, and evading other typical surveillance.
> Although the Application may have, in part, been duplicative
> of applications submitted with respect to certain co-
> defendants, the Application also included specific facts
> related to [Petitioner] [that], when considered in [their]
> entirety—and separately from the others—sufficiently met the
> necessity requirement.

*Lloyd*, 2019 WL 2181874, at *6-7. The Superior Court adopted the Commissioner's

finding that trial counsel's performance was not deficient under *Strickland*'s first prong,

stating that Petitioner "cannot show any likelihood that a motion to suppress would have

succeeded in light of the standard [Petitioner] would need to suppress wiretap

evidence." (D.I. 13-11 at 324)

Given Petitioner's failure to provide clear and contrary evidence to the contrary,

the Court accepts as correct the Superior Court's finding that the statements in the

wiretap application provided a sufficient factual underpinning satisfying the necessity

requirement and justifying the issuance of the wiretap order. Consequently, the

Superior Court reasonably applied *Strickland* when holding that defense counsel did not

perform deficiently by failing to file a meritless suppression motion.

The Superior Court also reasonably applied *Strickland* in finding that Petitioner

could not demonstrate prejudice. More than fifty witnesses testified at trial and

described drug deals with Petitioner. The evidence presented at trial included the

20

results of search warrants for Petitioner's residence, Petitioner's videotaped confession to the DEA, and video surveillance of Petitioner receiving a large sum of money. *See Lloyd*, 2019 WL 2181874, at *7. Given these circumstances, Petitioner cannot demonstrate a reasonable probability that the result of his trial would have been different if the wiretap evidence had not been admitted.

For these reasons, the Court concludes that the Superior Court reasonably applied *Strickland* when denying Petitioner's instant IATC Claim. Accordingly, the Court will deny Claim Two for failing to satisfy § 2254(d).

### C. Claims Three and Four: Procedurally Barred IATC Arguments

In Claim Three, Petitioner contends trial counsel provided ineffective assistance by failing to move to suppress the wiretap warrants for his phones on the basis that the State failed to demonstrate probable cause. (D.I. 9 at 14-15) Claim Four asserts that trial counsel provided ineffective assistance by failing to file a motion for judgment of acquittal. (D.I. 9 at 9) The record reveals that Petitioner did not exhaust state remedies for these two Claims because he did not present the arguments to the Delaware state courts in his Rule 61 motion and post-conviction appeal. At this juncture, any attempt by Petitioner to exhaust state remedies by raising Claims Three and Four in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as successive under Rule 61(i)(2). *See Parker v. DeMatteis*, 2021 WL 3709733, at *6 (D. Del. Aug. 20, 2021). Although Rule 61 provides for an exception to its procedural bars if a Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claims. Similarly, the exceptions to Rule 61's bars contained in Rule 61(i)(5)

21

and (d)(2) do not apply to Petitioner's case, because he does not allege a viable claim of actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to Claims Three and Four.

Since Petitioner is precluded from exhausting state remedies for Claims Three and Four, the Court must excuse Petitioner's failure to exhaust but treat the Claims as procedurally defaulted. Consequently, the Court cannot review the merits of Claims Three and Four absent a showing of cause for the default and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claims are not reviewed.

Petitioner does not assert any cause for his failure to include Claims Three and Four in his Rule 61 motion and post-conviction appeal. In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence. *See infra* at Section III.D. Accordingly, the Court will deny Claims Three and Four as procedurally barred from federal habeas review.

### D. Claim Five: Actual Innocence

In his final Claim, Petitioner contends that he is actually innocent because: "(1) he was never identified by name on any of the wiretaps, (2) no illegal contraband or evidence was located . . . during the search of his residence, and (3) he was never witnessed committing a criminal act by law enforcement." (D.I. 9 at 18) Petitioner also asserts that he is innocent because he was convicted on the basis of testimony from "self-interested co-defendants" who received "sweetheart deals" from the State, and the

22

"State's failure to disclose exculpatory cooperation agreements, and trial counsel's failure to raise the same constitute newly discovered evidence for the purposes of *Schlup* actual innocence gateway." (*Id.* at 18-19) (emphasis in original)  It appears Petitioner is asserting actual innocence as both a freestanding claim and as a gateway claim to excuse the procedural default of Claims Three and Four.  For the reasons discussed below, Petitioner has not satisfied the threshold showing required to succeed on either type of actual innocence claim.

In "certain exceptional cases involving a compelling claim of actual innocence," a prisoner may assert actual innocence as a gateway for obtaining habeas review of defaulted claims.  *House v. Bell*, 547 U.S. 518, 521, 536-37 (2006).  Yet, whether a freestanding claim of actual innocence is cognizable on federal habeas review remains an open question in Supreme Court jurisprudence.  *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *Reeves v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018).  Even for gateway claims, "[a]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.  Assuming, *arguendo*, that an assertion of actual innocence could constitute a freestanding claim, a petitioner's burden on any such claim "would necessarily be extraordinarily high" and "more demanding" than that applied to gateway actual-innocence claims.  *Herrera v. Collins*, 506 U.S. 390, 416 (1993); *see also Reeves*, 897 F.3d at 160 n.4 (describing hypothetical freestanding actual-innocence standard as "more demanding" than that applied to gateway actual-innocence claims).  To put the burden for establishing a freestanding claim of actual innocence in perspective, a gateway actual innocence claim that is asserted in an effort to overcome the statute of limitations bar for habeas cases will only prevail if it is based

23

on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [ ] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, Petitioner has not presented any facts to establish his actual innocence nor has he presented any colorable evidence of his actual innocence. Therefore, Petitioner's instant assertion of innocence does not satisfy the *Schlup* standard. Accordingly, the Court will deny Claim Five for failing to assert an issue cognizable on federal habeas review or, alternatively, as meritless.

## IV.     CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack,* 529 U.S. at 484.

The Court has concluded that the instant Petition fails to warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

24

## V.    CONCLUSION

For the reasons discussed above, the Court will deny the instant Petition without an evidentiary hearing and without issuing a certificate of appealability.

The Court will issue an Order consistent with this Memorandum Opinion.